UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALEX SCHAUFFERT, | ) |
| | ) |
|     Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON; GAB ROBINS NORTH AMERICA, INC., | ) ) )    No. 3:09-0510 |
| | )    JUDGE ECHOLS |
|     Defendants/Cross-Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| BRAUN CONSTRUCTION SERVICES, INC., | ) ) |
| | ) |
|     Defendant/Counter-Plaintiff/ Cross-Plaintiff. | ) ) |

## MEMORANDUM

This is an insurance coverage dispute. Defendants Certain Underwriters At Lloyd's, London ("Lloyd's") filed a Motion to Dismiss Braun Construction Services, Inc.'s ("Braun's") Crossclaim (Docket Entry No. 20), to which Braun filed a response in opposition (Docket Entry No. 26), and Lloyd's filed a reply (Docket Entry No. 32). Additionally, Defendant GAB Robins North America, Inc. ("GAB") filed a Motion for Summary Judgment As To Crossclaim (Docket Entry No. 28), to which Braun filed a response in opposition (Docket Entry No. 33), and GAB filed a reply (Docket Entry No. 37).

Lloyd's also filed a Motion To Strike Affidavit Of Brent Easterwood, Or In The Alternative, Objection To Affidavit Of Brent Easterwood (Docket Entry No. 38), to which Braun filed a response in opposition (Docket Entry No. 39), and Lloyd's filed a reply (Docket Entry No. 41). The motion

1

is summarily denied. Braun submitted the Easterwood affidavit in response to GAB's motion for summary judgment. Braun did not present the affidavit with regard to Braun's claims against Lloyd's, and the Court has not considered the affidavit in connection with Lloyd's Rule 12(b)(6) motion to dismiss for failure to state a claim.

## I. FACTS

### A. Facts alleged in the Complaint

Plaintiff Alex Schauffert ("Schauffert") is a resident of the State of California. He owns an eight-unit residential apartment building located at 316 Nix Dr., Madison, Tennessee. Lloyd's insured the property.

In the early morning hours of January 27, 2009, part of the building's roof collapsed during the course of rain and freezing rain. Cathy Watry, Schauffert's property manager, received phone calls from tenants that water was entering the building. Watry and others tried to cover the roof and begin the drying-out process. Watry contacted the local insurance agent who had helped place the policy with Lloyd's and submitted a notice of loss to start the claim process. Lloyd's retained GAB, a Delaware corporation doing business in Tennessee, to act as its claims adjuster. (Docket Entry No. 1, Notice of Removal, Complaint ¶¶ 1-8.)

On the afternoon of January 27, 2009, Watry received a call from Brad Espey ("Espey") of GAB. He advised her that Lloyds had retained GAB to act as the adjuster for Lloyd's and he was sending a water removal company to the property the next morning. On January 28, 2009, Espey again contacted Watry to advise her that Braun was on the way to the property to begin the drying process and to construct a temporary roof. Schauffert alleges that Espey "advised at that time that the temporary roof was covered under the policy, as was the demolition of the wet areas and the rebuilding." (Id. ¶¶ 8-9.)

2

Case 3:09-cv-00510   Document 47   Filed 12/23/09   Page 2 of 19 PageID #: 445

At about 8:30 a.m. on January 28, 2009, Brent Easterwood ("Easterwood") of Braun appeared at the property with approximately sixteen (16) workers. Watry was not present, but Easterwood found her husband, Jim Watry, working at the property. Easterwood asked Jim Watry to sign a document entitled, "Access and Authorization," so Braun could enter the property and begin work. Schauffert alleges that Jim Watry signed the document with the understanding that it was merely to allow Braun access to the property, according to instructions from GAB. Schauffert further alleges that Mr. Watry did not have authority to sign a contract on his behalf and that Mr. Watry did not intend to do so. Schauffert also alleges that the document Mr. Watry signed was a purported agreement to bind the signatory to pay Braun for an open-ended amount of money for all needed repairs, to appoint Braun to endorse checks from any insurer for the work, and to authorize payment of attorney's fees and costs in case of the need for collection. Schauffert alleges these clauses were not disclosed to him or to Mr. Watry before Mr. Watry signed the document. (Id. ¶¶ 10-11.)

On becoming aware of the contents of the "Access and Authorization," Cathy Watry, on Schauffert's behalf, sent a facsimile letter to Braun, copied to Espey, at approximately 9:00 a.m. on the morning of January 30, 2009. The letter stated that Jim Watry did not have authority to enter into any binding contract, and that Schauffert did not authorize Braun to do any work "not authorized and agreed to be paid for by the insurance company." Cathy Watry also spoke by telephone to Espey for GAB and Easterwood for Braun on the morning of January 30 to confirm Schauffert's limitations on Braun's actions. (Id. ¶ 12.)

Schauffert alleges that Braun's work at the property continued until February 5, 2009, and the vast majority of the work was done after Cathy Watry sent the facsimile letter on January 30. Espey repeatedly advised Cathy Watry that the temporary roof, the drying process, and the

3

demolition and rebuilding were covered under the policy. The only question about coverage according to Espey was whether the permanent roof would be covered under the policy. Schauffert alleges that he relied on these assurances of coverage. (Id. ¶ 13.)

According to Schauffert, Braun caused considerable damage to the property by using unskilled laborers who did more harm than good. They removed most of the interior dry wall, a great deal of it unnecessarily; ripped out cabinets and fixtures; knocked a hole in an exterior wall; and generally destroyed the interior of the property. Numerous fixtures such as doors and blinds disappeared from the property. Schauffert alleges that the cost to repair the property is now far greater than it would have been, but for Braun's actions and the resulting necessary Metro Code upgrades. (Id. ¶ 14.)

The Complaint further alleges that Lloyd's and GAB sent an engineer to inspect the roof on January 29 to determine the cause of the roof collapse. Schauffert and Cathy Watry understood from Espey that the purpose of the inspection was to determine if the replacement roof was covered under the policy. Watry's conversations with the engineer led her to the same conclusion. The engineer's report, later received by Schauffert, referenced the "collapse" of the roof and listed the weight of ice and water as combining with deteriorated roof sheathing to cause sudden failure of the roof. Schauffert alleges that he maintained the roof adequately to his knowledge, and any decay was hidden from view and not known to him prior to the collapse. (Id. ¶ 15.)

Schauffert and Cathy Watry continued to receive estimates and communications from GAB regarding the property repairs throughout February and into March 2009. There was no indication of any problem with coverage for the damages, other than whether the roof itself would be repaired under the policy. Schauffert delayed construction, waiting on what he thought was approval of the estimates by Lloyd's. Schauffert alleges he performed all conditions and duties required of him as

4

an insured under the policy. On March 20, 2009, the Lloyd's claims administrator sent Schauffert a letter denying coverage for any of the damages or repair costs, and Lloyd's refused to pay Braun. Schauffert received a bill from Braun for their work in the amount of $82,153.99. (Id. ¶¶ 16-17.)

Schauffert filed suit, bringing claims against Lloyd's for breach of contract, misrepresentation and violation of the Tennessee Consumer Protection Act ("TCPA"); against GAB for misrepresentation and violation of the TCPA; and against Braun for attempting to collect payment for unauthorized charges, for converting or damaging fixtures in the building, and for violation of the TCPA. In the prayer for relief, Schauffert claims his damages exceed $191,161.87. He seeks punitive damages and treble damages under the TCPA, attorney's fees and costs, and pre- and post-judgment interest. He asks the Court to determine what, if any, portion of Braun's charges he owes and what part, if any, is owed by Lloyd's and Braun.

Braun then filed a counterclaim against Schauffert and cross-claims against GAB and Lloyd's. The cross-claims are the subject of the pending motions to dismiss and for summary judgment.

## B. Facts alleged in Braun's cross-claims against Lloyd's and GAB

In answer to the Complaint and in its cross-claim against Lloyd's, Braun admits that it went to the Schauffert property at the request of GAB representative, Espey, and at the request of Cathy Watry. Braun alleges that its representative, Easterwood, received requests from Espey and Cathy Watry to begin work at the Schauffert property. Cathy Watry informed Easterwood that she would not be on-site the morning of January 28, 2009 and instructed Easterwood to see Mr. Watry, her spouse. When Easterwood and his workers appeared at the property at approximately 8:00 a.m. on January 28, Easterwood met with Jim Watry, in accordance with Cathy Watry's instructions. Easterwood explained to Mr. Watry the terms of Braun's "Access and Authorization" form. Braun

5

requires that the contract be executed by a property owner or agent before it begins performing services. After hearing Easterwood's explanation and reading the entire document, Mr. Watry verbally expressed his understanding of the document and signed it. At no time did Mr. Watry communicate any misunderstanding of the terms of the document to Easterwood or any representative of Braun or inform Braun of his lack of authority to execute the document. Braun admits that the document Mr. Watry signed is a contract which binds Schauffert to pay Braun for the services provided, as well as costs and attorney's fees for the collection if legal action is necessary. Braun alleges that it relied in good faith on the contract executed by an individual with apparent authority and with the express consent and knowledge of Schauffert's agent with actual authority. Easterwood then met with Espey, the Watrys, and Ted Kiesler, another Braun representative, at the property at approximately 1:00 p.m. on January 28, 2009, to discuss the services being performed by Braun and those required. At the 1:00 p.m. meeting, Espey advised the Watrys, Mr. Easterwood and Mr. Kiesler that the temporary roof was covered under Schauffert's insurance policy, as well as the emergency services and repairs to be performed by Braun. The roof and much of the interior of the property was in very poor condition upon Braun's arrival to the property. (Docket Entry No. 11, Braun's Answer, Counterclaim, and Cross-claims ¶ 4, 10-13.)

Braun also admits that it received a facsimile letter from Cathy Watry over 48 hours after it began performing services on the property with Cathy Watry's personal knowledge and upon her request and authorization to do so. Following receipt of the facsimile, Braun agreed with Cathy Watry to perform only work or services "that they were not advised by Mr. Espey as falling outside of Plaintiff's insurance policy's coverage." (Id. ¶ 12.)

Braun further admits that it performed work on the property after 9:00 a.m. on January 30, 2009, in accordance with its agreement with Cathy Watry and Espey's representations as to what

6

was covered by insurance. Braun relied on Espey's direction as to what services were covered under the policy. At no time did Espey inform Braun that there were any insurance concerns with anything other than the permanent roof, which Espey was having an engineer inspect. Espey informed Braun and Cathy Watry that the permanent roof likely was not covered under the policy. (Id. ¶ 13.)

Braun also states that, before removing any drywall, Braun showed the Watrys and Espey the drywall that had to be removed and received permission to remove it. Any interior drywall removal was performed to dry out the building. Other drywall fell due to extensive water damage. Any fixtures, including cabinets, doors, and trim, that were removed were due to drywall removal. Any irreparable damage to fixtures was caused by extensive rot from recent or past water damage or other previous damaging conditions. Braun alleges it has no knowledge of any salvageable property that was removed from the property. In regard to Metro Code violations, Braun only has knowledge that Mattie Jones was called to the property prior to the performance of any work by Braun on the interior of the property as the result of a tenant's complaints on January 28, 2009, about the safety and condition of the property due to the water damage to the interior. Ms. Jones contacted Easterwood and informed him and the Watrys that she was condemning the building, because it was not fit for human habitation. Braun also has knowledge of a letter to Schauffert concerning the use and occupancy of the property which resulted from his failure to attend a hearing with a Metropolitan Government of Nashville and Davidson County Codes official. (Id. ¶ 14.)

Braun admits that it presented Schauffert with a demand for payment and an invoice in the amount of $82,153.99. Braun denies that it unnecessarily damaged the Schauffert property. (Id. ¶¶ 17, 19, 21.)

In its cross-claims against Lloyd's and GAB, Braun alleges that Espey acted as an agent with actual authority for Lloyd's and acted at all times in the course of his employment for GAB, an agent

7

with actual authority for Lloyd's. Braun also alleges that, at all times during its provision of services, it relied on Espey's representations as to what was covered under Schauffert's insurance policy and that its reliance on the representations was to its detriment. Braun brings legal claims against Lloyd's and GAB for breach of contract, negligent misrepresentation, and promissory estoppel. Braun seeks payment of its invoice by Lloyd's and/or GAB, plus prejudgment interest.[1]

**C. Additional facts provided in connection with GAB's summary judgment motion**

GAB produced the Affidavit of Brad Espey (Docket Entry No. 31). Espey attests that, on or about January 27, 2009, GAB was assigned by CJW & Associates ("CJW"), a third-party insurance administration service provider, to provide adjusting services on behalf of Lloyd's for Schauffert's property. Lloyd's, through CJW, has third-party administration ("TPA") Claim Standards, which provide the scope of the insurance adjusting work it expects GAB to perform. The TPA Claim Standards were provided to GAB by CJW when it was hired to perform adjusting services on behalf of Lloyd's. As set forth in the TPA Claim Standards attached to the affidavit, Espey's adjusting duties were limited to providing detailed replacement cost and actual cash value estimates of the property damage, drafting diagrams of the damaged property, taking pictures of the damaged property, recording statements with relevant witnesses, investigating the cause of the property damage, and verifying mortgage and other lien holders. (Espey Aff. ¶¶ 3-6.)

Espey further attests that, "[a]s per the TPA Claim Standards, I have no authority to make decisions affecting or interpreting coverage under the policy." (Id. ¶ 7.) Espey denies that he made representations to Braun or to anyone else that coverage was available under Lloyd's insurance policy. (Id. ¶ 8.)

---

[1] In the counterclaim, Braun seeks payment of its invoice by Schauffert on theories of breach of contract and unjust enrichment, or perfection of its materialmen's lien and sale of the property to pay the debt and judgment rendered for any deficiency. (Docket Entry No. 11 at 17.)

8

Espey did have one or more conversations with Ted Kiesler, Braun's Manager in Nashville, and they discussed that Schauffert's insurance was a special loss policy underwritten by Lloyd's and that Lloyd's decision as to coverage was dependent on a determination as to the cause of the loss. Braun was made aware that Donan Engineering was assigned to inspect the roof structure to determine the cause of the water intrusion. Espey contacted Donan Engineering on January 29, 2009, and requested inspection of the roof by one of Donan's engineers. Braun was aware that Lloyd's could not make a determination of insurance coverage until receipt of the engineer's report as to the cause of the loss. (Id. ¶ 9.)

Espey denies that he entered into any contract, implied or otherwise, on behalf of GAB with any representative of Braun. (Id. ¶ 10.) He also denies that he participated in Lloyd's decision to deny coverage of Schauffert's claim under the policy. (Id. ¶ 11.) He states that he did not make any promise or guarantee to pay for any services rendered by Braun on behalf of Schauffert. (Id. ¶ 12.)

In response to GAB's summary judgment motion, Braun supplied the Affidavit of Brent Easterwood. (Docket Entry No. 36.) As an employee of Braun, he was first contacted about the need for Braun's emergency and repair services at Schauffert's property by Espey, an employee of GAB. Easterwood attests that Espey made statements to him about Lloyd's insurance coverage of the property and Easterwood understood Espey to be an agent of Lloyd's. (Easterwood Aff. ¶¶ 2-4.) After Easterwood received a request for services from Espey, Easterwood communicated with Cathy Watry, the property manager. Easterwood, Espey, and Jim and Cathy Watry met at the property and discussed services to be performed by Braun. At that meeting, Espey advised Easterwood that the temporary roof, the emergency services, and the repairs were covered under Schauffert's policy. (Id. ¶¶ 5-7.)

9

Following the meeting, Cathy Watry provided written notice to Braun of her actual agency (presumably for Schauffert), and expressly authorized Braun to perform only the services requested, authorized and agreed to be paid for by Lloyd's. (Id. ¶ 8.) At all times during Braun's performance of services, Braun relied on the representations of GAB's representative, Espey, as to what was covered under Schauffert's policy. (Id. ¶ 9.) Espey advised Easterwood and others, including the Watrys, that the only part of the property possibly not covered by the policy was the permanent roof. (Id. ¶ 10.) Espey stated that coverage for any permanent roof repairs was in question pending an inspection by an engineer. Easterwood was made aware that Lloyd's could not make a determination of insurance coverage with regard to the permanent roof until receipt of Donan Engineering's report as to the cause of loss. (Id. ¶ 11.) Espey advised Easterwood that the insurance coverage for any temporary repairs was approved and that it was required to mitigate interior damages. (Id. ¶ 12.) Espey specifically advised Easterwood that the resulting damages and mitigation were covered and were not in dispute. (Id. ¶ 13.)

Easterwood further attests that Braun successfully performed and completed all work requested at the property, but Braun received no payment for its performance. (Id. ¶¶ 14-15.) Espey contacted Easterwood well after Braun completed performance on the property and advised Kiesler that Espey had to get the engineer, after several submissions, to submit the reports the way Lloyd's wanted them. Espey stated that Lloyd's was trying to deny Schauffert's claim. According to Espey, the engineer had to submit the reports several times before Lloyd's would accept them. (Id. ¶ 16.) Only after Braun had completed its work did Espey request an estimate for repairs, and then it was a while after that when Espey notified Easterwood that Lloyd's was denying the claim. (Id. ¶ 17.) Easterwood repeatedly asked Espey to get his paperwork completed so that Braun could receive

10

payment. Espey represented to Easterwood that Braun would be paid for its services on Schauffert's property. (Id. ¶¶ 18-19.)

Braun does not dispute most of the facts as stated by GAB. Braun does not dispute that GAB did not receive any goods from Braun. Braun also agrees that it has not alleged any specific act of fraud against GAB. However, Braun does dispute whether Espey made representations to Braun about coverage and whether Espey had actual or apparent authority to make the representations as an agent for Lloyd's.

## II. STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss a cross-claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations made in the cross-claim and construe the allegations in favor of the cross-plaintiff. However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A party may obtain summary judgment on a cross-claim if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate

11

question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

**A. Lloyd's motion to dismiss under Rule 12(b)(6)**

*1. Braun's breach of contract claim*

To state a claim for breach of contract under Tennessee law, a plaintiff must allege: (1) the existence of an enforceable contract, (2) nonperformance of the contract amounting to a breach of the contract; and (3) damages caused by the breach. Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd., 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law); C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-677 (Tenn. Ct. App. 2007). Lloyd's contends that Braun failed to allege the existence of a valid, enforceable agreement between the parties, and Braun implies that Lloyd's entered into an oral agreement with Braun to act as guarantor on the contract between Braun

12

and Schauffert. Even assuming such an oral agreement was made (and Lloyd's does not agree that it was), the statute of frauds bars Braun's recovery because Tennessee law requires that all guaranty contracts be in writing to be enforceable.

It is not alleged in the cross-claim that Braun's and Lloyd's entered into an express contract that resulted from a meeting of the minds and sufficient consideration, and that was sufficiently definite to be enforced. See Peoples Bank of Elk Valley v. ConAgra Poultry Co., 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991). The only express, written contract that may have existed was between Braun and Schauffert, and even the formation and enforcement of that contract is disputed in the Complaint and Counterclaim.

Braun contends that it alleged the existence of a contract implied in law, in other words, an agreement "'imposed by operation of law, without regard to the assent of the parties, on grounds of reason and justice.'" Scandlyn v. McDill Columbus Corp., 895 S.W.2d 342, 345 (Tenn. Ct. App. 1994) (quoted case omitted). To prevail on such a theory, Braun must allege and prove the following elements:

> "A benefit conferred upon the defendant [Lloyd's] by the plaintiff [Braun], appreciation by [Lloyd's] of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for [Lloyd's] to retain the benefit without payment of the value thereof. The most significant requirement for a recovery . . . is that the enrichment to [Lloyd's] be unjust."

EnGenius Entertainment, Inc. v. Herenton, 971 S.W.2d 12, (Tenn. Ct. App. 1997)(quoting Haynes v. Dalton, 848 S.W.2d 664, 666 (Tenn. Ct. App. 1992)). Braun alleged in the cross-claim that "[a]s an employee of GAB, an agent with real authority for Lloyd's, Mr. Espey had real authority to enter into an implied contract with Braun *for services to benefit Lloyd's insured, Mr. Schauffert*." (Docket Entry No. 11, Cross-claim ¶ 55 (emphasis added).) Thus, Braun's own pleading asserts that Braun

13

conferred a benefit on Schauffert, not on Lloyd's. Where Braun does not allege a benefit conferred on Lloyd's, Braun fails to state a claim for implied contract against Lloyd's.

In response to the motion to dismiss Braun raises a different theory than what was plead in the cross-claim. Braun argues that Lloyd's accepted payment for the policy premium from Schauffert and then Lloyd's through its agent, Espey, requested that Braun provide services to Lloyd's insured, Schauffert. This is too far a stretch. The Court concludes as a matter of law that Braun did not confer the benefit of its repair services on Lloyd's; rather, Braun conferred the benefit on Schauffert. Further, to the extent Braun alleged that Lloyd's made a special promise to answer for the debt of Schauffert, the Tennessee statute of frauds requires that such an agreement be in writing to be enforceable. Tenn. Code. Ann. § 29-2-101(a)(2). Therefore, Braun fails to state a claim against Lloyd's for breach of contract, and this claim will be dismissed with prejudice.

*2. Braun's negligent misrepresentation claim*

Under Tennessee law, a claim for negligent misrepresentation consists of the following elements: (1) the defendant acted in the course of his business, profession or employment or in a transaction in which he had a pecuniary (as opposed to gratuitous) interest; (2) the defendant supplied false information meant to guide others in their business transactions; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information. John Martin Co. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431 (Tenn. 1991). Lloyd's contends that any alleged statement that Espey made regarding insurance coverage was not made to guide Braun in its business or for Braun's benefit and therefore, any reliance by Braun on any alleged statement regarding coverage was unreasonable as a matter of law. Braun relies primarily on McGaugh v. Galbreath, 996 S.W.2d 186 (Tenn. Ct. App. 1999), but the Court concludes that McGaugh is distinguishable from the case at hand.

14

In that case, a seller of real estate filed a third-party complaint against the bank and the attorney who advised the bank in the real estate transaction at issue. Id. at 191. The seller alleged that the attorney gave inaccurate advice to the bank concerning a cloud on the title, which in turn caused the buyer to breach the sale contract between the buyer and seller. Id. On those facts, the Tennessee Court of Appeals ruled that the seller was not the "right" plaintiff to bring a negligent misrepresentation claim because the attorney's advice, assuming it was faulty and the attorney failed to exercise reasonable care in obtaining the title information, was not given for the seller's benefit nor did the seller do anything in reliance on the advice. Id. at 192-193.

Here, Braun alleged that Espey, acting as the actual or apparent agent for Lloyd's, made false representations directly to Braun concerning the specific kinds of repair services that would be covered by insurance, and Braun justifiably relied on Espey's representations in providing repair services to Schauffert, who refused to pay the invoice when Lloyd's ultimately denied coverage. Whether Espey did, in fact, act with actual or apparent authority for Lloyd's is a question that will require discovery and proof. At this point, on a motion to dismiss, the Court must accept as true the allegation that Espey acted as Lloyd's agent. Braun's allegations plainly fall within the second and fourth elements of the tort, which require assertions, and later proof, that Lloyd's supplied false information *meant to guide others (*which in this situation would include Braun as well as Schauffert) in their business transactions and that Braun justifiably relied on such representations when it provided repair services to Schauffert on the assurance that insurance proceeds would be paid. The Court cannot say at this juncture that Braun has failed to show a facially plausible claim of negligent misrepresentation. Therefore, Lloyd's motion to dismiss this claim will be denied.

15

*3. Braun's promissory estoppel claim*

As to the claim of promissory estoppel, in Tennessee:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

Sparton Tech., Inc. v. Util-Link, LLC, 248 Fed. Appx. 684, (6th Cir. 2007) (quoting Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991). The detriment suffered in reliance must be substantial in an economic sense, the substantial loss to the promisee acting in reliance must have been foreseeable by the promisor, and the promisee must have acted reasonably in justifiable reliance on the promise as made. Id.

Lloyd's points to paragraph 48 of the cross-claim against it to raise the specious argument that Braun did not allege any promise that Lloyd's actually made to Braun. Paragraph 48 states: "Lloyd's, by and through GAB, made a promise of insurance coverage and payment for service rendered which it should have reasonably expected to induce action by Braun." Lloyd's contends that this "self-serving allegation does not allege to whom any promise was made." (Docket Entry No. 20, Memorandum at 10.)

In paragraph 46 of the promissory estoppel cause of action, however, Braun incorporated by reference paragraphs 1-25 of the counterclaim as if fully set forth in the promissory estoppel claim. In those twenty-five factual paragraphs, which the Court referred to above in the "Facts" section of this opinion, Braun clearly spelled out the facts supporting its claim that Lloyd's made a promise to Braun, through its actual or apparent agent, GAB insurance adjuster Espey, that insurance coverage existed and would be paid for certain repair services. Braun alleged in the cross-claim that Lloyd's promise of coverage induced Braun, a third person, to provide repair services to Schauffert. Braun has alleged that it justifiably relied on Lloyd's promise and that its reliance was foreseeable

16

to Lloyd's. There is simply no merit to Lloyd's contention that Braun failed to allege the elements of promissory estoppel and facts that fit within those elements.

Lloyd's contends, however, that Braun's promissory estoppel claim should be treated as an oral guaranty for the debt of another and dismissed as in violation of the statute of frauds. Lloyd's cites D & S Coal Co., Inc. v. USX Corp., 678 F.Supp. 1318, 1323 (E.D. Tenn. 1988), which followed Tennessee cases to hold that, where the statute of frauds applies, promissory estoppel may be used only to avoid the perpetration of a fraud, and where there is no allegation or proof of fraud, the doctrine of promissory estoppel may not be applied. Braun did not address this argument in its response. Braun has not alleged that Lloyd's or GAB acted fraudulently or that they intentionally made misrepresentations to Braun. Because there is no allegation of fraud, the Court will follow D & S Coal, Inc. to hold that promissory estoppel may not be applied in this situation. Therefore, Braun's promissory estoppel claim will be dismissed for failure to state a claim.

**B. GAB's motion for summary judgment under Rule 56**

Braun's claims against GAB for breach of contract and promissory estoppel fail for the same reasons Braun's claims for breach of contract and promissory estoppel failed against Lloyd's, as explained above. While GAB cites some different cases than Lloyd's, the principles at issue remain the same.

Although GAB contends that Braun cannot show an implied contract in fact, citing Jones v. Lemoyne-Owen College, 2009 WL 1941515 at *8 (Tenn. Ct. App. July 8, 2009), the Court finds no indication in the cross-claim or the briefing that Braun is attempting to allege an implied contract in fact. The Court does conclude as a matter of law, similarly to its holding with regard to Lloyd's' motion to dismiss, that to the extent Braun alleged an implied contract in law, Braun did not confer the benefit of its repair services on GAB; rather, Braun conferred the benefit on Schauffert. See

17

Ferguson v. Nationwide Property & Cas. Ins. Co., 218 S.W.3d 42, 51 (Tenn. Ct. App. 2006). Further, to the extent Braun alleged that GAB made a promise with Lloyd's to guarantee the debt of Schauffert, the Tennessee statute of frauds requires that such an agreement be in writing to be enforceable. Tenn. Code. Ann. § 29-2-101(a)(2). Therefore, GAB is entitled to summary judgment on this claim.

There are clearly genuine issues of material fact for trial about any representations Espey made to Braun on behalf of GAB and/or Lloyd's, as well as the existence and scope of Espey's agency. These disputes of fact preclude the Court from entering summary judgment in GAB's favor on the elements of the negligent misrepresentation claim. See John Martin Co., 819 S.W.2d at 431.

Finally, Braun's promissory estoppel claim against GAB fails for the same reason Braun's similar claim against Lloyd's failed. The Court concludes that Braun produced sufficient evidence of a promise made by GAB that insurance coverage existed for certain emergency and repair services and that such insurance proceeds would be paid. However, promissory estoppel may be used only to avoid the perpetration of a fraud, and where there is no allegation or proof of fraud, the doctrine of promissory estoppel may not be applied if the statute of frauds comes into play. D & S Coal Co., Inc., 678 F.Supp. at 1323. Braun did not address GAB's statute of frauds argument in its response. Because Braun has not alleged that GAB acted fraudulently or that GAB intentionally made misrepresentations to Braun, the Court will follow D & S Coal, Inc. to hold that promissory estoppel may not be applied in this situation. Therefore, GAB is entitled to summary judgment on Braun's promissory estoppel claim.

## IV. CONCLUSION

For all of the reasons stated, Defendants Certain Underwriters At Lloyd's, London's Motion To Dismiss Braun Construction Services, Inc.'s Crossclaim (Docket Entry No. 20) and GAB Robins

North America, Inc.'s Motion For Summary Judgment As To Crossclaim (Docket Entry No. 28) will be granted in part and denied in part. The motions will be granted with respect to Braun's claims for breach of contract and promissory estoppel. The motions will be denied with respect to Braun's claim for negligent misrepresentation.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE